[No. E004620. Fourth Dist., Div. Two. Oct. 14, 1988.]

In re JOSHUIA S., a Person Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES et al., Plaintiffs and Respondents, v.
PAULA S., Defendant and Appellant.

---

---

**COUNSEL**

Alys Briggs, under appointment by the Court of Appeal, for Defendant and Appellant.

Gerald J. Geerlings, County Counsel, Beth A. Melvin, Deputy County Counsel, Jean Pfeiffer Leonard and Sharon J. Waters for Plaintiffs and Respondents.

Deborah J. Mohr-Walker, under appointment by the Court of Appeal, for Minor.

---

**OPINION**

**SCHULTE, J.**\*—Objector Paula S., mother of the minor Joshuia S., appeals from the juvenile court's order granting de facto parent status to Joshuia's foster parents, on the ground that the court should have used the clear and convincing evidence standard of proof in reaching its determination.

## FACTS

Joshuia S. was adjudged a dependent of the court and placed in the care of foster parents for seven months, at which time the court scheduled a permanency planning hearing on Joshuia's case. Joshuia's foster parents filed a motion to be recognized as his de facto parents for the purposes of the juvenile court proceedings. They indicated in their moving papers their desire to adopt Joshuia. The court applied the preponderance of the evidence standard of proof in reaching its decision to recognize the de facto parent status of the foster parents. The court then made the following order concerning Joshuia's placement: "The bests [*sic*] interests of the child requires [*sic*] that at this time he remain with the defacto [*sic*] parents and it is

---

\* Assigned by the Chairperson of the Judicial Council.

so ordered. Placement with the defacto [*sic*] parents is not inconsistent with our continued goal of reunification with the mother. Further, it is not inconsistent with continuing contact between the child and the maternal grandmother. The defacto [*sic*] parents are ordered to cooperate with continuing reunification efforts and with continuing visitation with the maternal grandmother."

## DISCUSSION

Joshuia's mother contends that the juvenile court erred in applying the preponderance of the evidence standard of proof rather than the clear and convincing evidence standard in determining whether the foster parents should have de facto parent status for litigation purposes. She is joined in this contention by the Department of Public Social Services. The gravamen of her argument is that a higher standard should be applied because "significant consequences may follow the grant of such a status," including "an ultimate termination of parental rights . . . based upon the grant of de facto parent status." She asserts that in termination proceedings "the de facto parent would . . . already have an implied preference [over the natural parent] from that status alone. It is akin to a pretrial ruling or an action for declarative relief that will have already effectively determined the ultimate issue by the nature of the ruling."

Initially, we observe that the mother is placing too much significance in the status of de facto parent. The granting of such status does not automatically confer custody of the minor dependent child on persons recognized as de facto parents, as she implies. Rather, such a grant confers standing upon such persons to assert their interest in the custody, companionship, care and management of the child in dependency proceedings. (*In re B. G.* (1974) 11 Cal.3d 679, 692-693 [114 Cal.Rptr. 444, 523 P.2d 244].) Our Supreme Court noted in *In re B. G.* that "[t]he juvenile court in a dispositional hearing must undertake 'a judicious appraisal of all available evidence bearing on the child's best interests' including an evaluation of the relative merits of alternative custody awards. [Citation.] The presence of de facto parents will aid the court in that endeavor; the views of such persons who have experienced close day-to-day contact with the child deserve consideration; moreover, an award of custody to such de facto parents is often among the alternate dispositions which the court must evaluate." (*Id.,* at p. 693.) This rationale also applies to review and permanency planning hearings. (See *Christina K.* v. *Superior Court* (1986) 184 Cal.App.3d 1463, 1466-1467 [229 Cal.Rptr. 564].) As the court in *Christina K.* pointed out, the juvenile court is free to discount the testimony of persons granted de facto parent status, in determining what are the best interests of the child, if

it is revealed after granting standing that those persons do not have a close relationship to the child. (*Id.,* at p. 1467, including fn. 5.)

Next, we consider what standards of proof have been applied by our courts in reaching other decisions in dependency and termination proceedings, and the rationales for such applications.

Section 115 of the Evidence Code provides that "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." Our courts have not yet established whether the issue of de facto status should be decided by a preponderance of the evidence or clear and convincing evidence; nor has the Legislature spoken on this issue. However, the Legislature has established that the clear and convincing evidence standard must be applied in deciding whether to terminate parents' rights to their children (Civ. Code, § 232, subd. (c), & former subd. (a)(7)), and the Supreme Court has held that the clear and convincing standard in section 232 is both constitutional and consistent with the goals of the statute. (*In re Angelia P.* (1981) 28 Cal.3d 908, 918-919 [171 Cal.Rptr. 637, 623 P.2d 198].) Our appellate courts have in turn ruled that, if the juvenile court concludes that a minor child comes within its jurisdiction so as to be adjudged a dependent of the court pursuant to section 300 and following of the Welfare and Institutions Code, the clear and convincing evidence standard must be applied if custody of the child is awarded to a nonparent at the dispositional hearing. (*In re James T.* (1987) 190 Cal.App.3d 58, 66 [235 Cal.Rptr. 127]; *In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1113-1115 [200 Cal.Rptr. 789].) This rule has recently been codified in Welfare and Institutions Code section 361, subdivision (b). Conversely, section 355 of the Welfare and Institutions Code provides that the applicable standard of proof for the court to determine whether a child comes within the jurisdiction of the juvenile court pursuant to a dependency petition is preponderance of the evidence, and the majority of courts have held this standard to be appropriate at the jurisdictional phase. (*In re Cheryl H., supra,* 153 Cal.App.3d at p. 1112.)

In *In re Angelia P., supra,* 28 Cal.3d 908, our Supreme Court explained its reasons for holding that the clear and convincing evidence standard of proof to be constitutional and appropriate to the goals of Civil Code section 232. First, it pointed out that parenting is a fundamental right which can be disturbed " '. . . only in extreme cases of persons acting in a fashion incompatible with parenthood.' [Citations.]" (*Id.,* at p. 916.) However, it stated that parents' rights are not absolute and that competing interests must be considered in establishing the appropriate burden of proof for severing the parent-child relationship. (*Ibid.*) It identified those rights or interests as "those of (1) the parent and child in a continuing familial relationship; (2)

the parent in preserving the integrity and privacy of the family unit, free of state intervention and social stigma attached to either parent or child; (3) the child in a permanent, secure, stable, and loving environment; and (4) the state in protecting the child." (*Id.*, at p. 919.) The court quoted the United States Supreme Court's statement in *Addington* v. *Texas* (1979) 441 U.S. 418 at page 423 [60 L.Ed.2d 323, 329, 99 S.Ct. 1804] that " '[t]he function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding is to "instruct the factfinder concerning the degree of confidence our society thinks he [or she] should have in the correctness of factual conclusions for a particular type of adjudication." [Citation.] The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.' " (*In re Angelia P., supra,* 28 Cal.3d at p. 919.)

The *Angelia P.* court concluded that the beyond a reasonable doubt standard of proof is inappropriate in Civil Code section 232 actions because it is ordinarily utilized to protect individuals' primary liberty interests in personal freedom while section 232 proceedings require that the trier of fact weigh a complex group of interrelated interests. (28 Cal.3d at pp. 918-919.) In effect, the court determined that the right to parent, while important enough to require clear and convincing evidence to terminate it, was not so paramount that the parent should not share some of the risk of error with the child and the state. (*Id.*, at p. 919; see *Addington* v. *Texas, supra,* 441 U.S. at p. 423 [60 L.Ed.2d at p. 329].) Conversely the court rejected the use of the preponderance of the evidence test in section 232 actions. (*Angelia P., supra,* at p. 918.) It pointed out that the preponderance standard is ordinarily used in civil actions in which the conflicting interests and the potential consequences are much less weighty, and that severance of parental rights is important enough to require a higher evidentiary standard. (*Ibid.*) The court concluded that the clear and convincing evidence standard allocated the risks among litigants in section 232 proceedings in a manner consistent with the statute's goal of providing " 'the fullest opportunity to the parents for exercise of their rights not inconsistent with the ultimate best interests of the child' [citation]." (*Id.*, at p. 919.)

In *In re Cheryl H., supra,* 153 Cal.App.3d 1098, the appellate court was called upon to determine whether the preponderance or clear and convincing test should be used in deciding what limitations to place on parental custody at the dispositional phase of a dependency hearing in which custody was not being removed from the parent. (*Id.*, at p. 1114.) The court stated: "[t]he state's burden at the dispositional phase . . . is to prove a limitation on custody is made in the best interests of the child. The standard of proof on this issue, there being no provision of law to the contrary, is by a preponderance of the evidence. (Evid. Code, § 115.) . . . [¶] We believe this

standard of proof strikes the proper balance between the interests of children in a safe home (W&IC, § 202) and the interests of parents in maintaining the parent-child relationship. It also ensures the state upholds its duty to protect children from abuses of parental authority. [Citations.] Where, as here, a minor is ordered to remain in the custody of one of the parents we find no compelling policy, nor any statutory authority, to require a more stringent quantum of proof which, in effect, would make proof of neglect more difficult." (*Ibid.,* fn. omitted.)

Another appellate court dealt with the question of whether the preponderance of the evidence standard of proof is appropriate for determining if a child should be adjudged a dependent of the court pursuant to a petition under Welfare and Institutions Code section 300 and following. (*In re Lisa D.* (1978) 81 Cal.App.3d 192 [146 Cal.Rptr. 178].) The court observed: "[I]t would be a barbaric system which decreed a more stringent standard with respect to the simple finding of dependency. Is a court to do nothing if a preponderance of the evidence convinces it that a child is living in 'an unfit place . . . by reason of neglect, cruelty, depravity, or physical abuse . . . ?' Questions concerning a more stringent standard do not arise until a finding of dependency results in a disposition which severs the parent-child relationship either temporarily or permanently." (*Id.,* at p. 196; accord: *In re Jennifer V.* (1988) 197 Cal.App.3d 1206, 1211 [243 Cal.Rptr. 441].)

We hold that the juvenile court acted appropriately in applying the preponderance of the evidence standard of proof to determine whether Joshuia's foster parents were de facto parents for litigation purposes. Such a determination does not sever the parent-child relationship, either temporarily or permanently; nor does it affect the parents' due process interests in liberty or privacy. Rather, it gives the de facto parents a forum for asserting their interest in the child, as well as providing the juvenile court with additional information to use in reaching decisions concerning the child. Thus, the determination of de facto parent status is not so important or weighty as to require allocation of the risk of error in making such a determination which provides the natural parents with greater protection than that provided by the preponderance of the evidence standard. Such an allocation would unduly hamper the court's fact-finding ability and its duty to protect the child, and is not necessary to protect the natural parents' fundamental right to parent. Public policy, as illustrated by the authorities cited above, requires the use of the clear and convincing evidence standard in child dependency proceedings only when the question of severance of the parent-child relationship is being decided by the court.

## DISPOSITION

Order affirmed.

Campbell, P. J., and Hews, J., concurred.